IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

JEFFREY W. WILLIAMS,      )
     Plaintiff,      )
     )
v.      )      Civil Action No. 4:13-cv-00058
     )
CAROLYN W. COLVIN,      )
Acting Commissioner of Social Security,      )      By:   Joel C. Hoppe
     Defendant.      )      United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Jeffrey W. Williams seeks review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. On appeal, Williams argues that the Administrative Law Judge ("ALJ") erred in not finding that his impairment met the listing for intellectual disability, 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2014).[1] This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and this case is before the undersigned magistrate judge by referral under 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the administrative record, the parties' briefs, and the applicable law, I find that the ALJ's decision is supported by substantial evidence, and I recommend that the Commissioner's decision be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g),

---

[1] Under Rosa's Law, all reference in federal law to "mental retardation" was changed to reference "intellectual disability." Pub. L. No. 111-256, 124 Stat. 2643. This report and recommendation will follow suit.

1

1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (governing claims for DIB), 416.905(a) (governing adult claims for SSI). Social Security ALJs

2

follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Williams was born on December 2, 1961, Administrative Record [hereinafter R.] 174, 179, and at the time of the ALJ's decision was considered a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). He completed the tenth grade, having been enrolled in special education classes, R. 275–76, and has prior work history as a tobacco blender, box sorter, laborer, and brick mason, R. 42–43, 194–95, 205, 269. Williams applied for DIB on August 31, 2010, R. 174–75, and SSI on September 8, 2010, R. 178–85. He alleged a disability onset date of January 1, 2006, based on the following conditions: diabetes, artery blockage, arthritis, gout, shortness of breath, high blood pressure, and high cholesterol. R. 174, 178, 203.

The Commissioner rejected Williams's applications initially and on reconsideration. R. 19. On May 29, 2012, the ALJ held an administrative hearing at which Williams was represented by counsel. R. 34–65. In an opinion dated June 28, 2012, the ALJ found that Williams had diabetes mellitus, diabetic neuropathy, bilateral arthritis of the knees, status-post right shoulder tendinopathy and tear, morbid obesity, and degenerative disc disease, which qualify as severe

impairments. R. 21. The ALJ determined that Williams did not have a severe mental impairment, including intellectual disability. R. 22–23. Analyzing only Williams's severe physical impairments, the ALJ determined that none of them met or equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 23–24. The ALJ found that Williams had the residual functional capacity ("RFC") to perform less than a full range of light work,[2] and he can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, or scaffolds; and occasionally lift overhead with his dominant right arm. R. 24–25. Relying on the testimony of a vocational expert, the ALJ determined that Williams was not capable of performing his past work as a bricklayer. R. 28. The ALJ then found that Williams could perform other work, considering his RFC. R. 28–29. Accordingly, the ALJ determined that Williams was not disabled under the Act. R. 29. The Appeals Council denied Williams's request for review R. 1–3, and this appeal followed.

In the appeal before this Court, the Commissioner moved to dismiss Williams's complaint, asserting that Williams had not timely filed it. ECF Nos. 6, 7. Williams responded by pointing out that the Commissioner had confused him with another "Jeffrey W. Williams." ECF No. 9. The Commissioner moved to withdraw her motion to dismiss. ECF No. 10. On February 18, 2014, the Court granted the Commissioner's motion to withdraw the motion to dismiss and extended the time for the Commissioner to file a responsive pleading to March 4, 2014. ECF No. 11. That same day, Williams moved for summary judgment on the sole basis that the Commissioner had not filed a timely responsive pleading, ECF No. 12, and the Commissioner filed an Answer, ECF No. 13. Because the Commissioner's Answer was filed within the period

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he or she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

Case 4:13-cv-00058-JLK-JCH   Document 26   Filed 10/03/14   Page 4 of 14   Pageid#: 531

allowed by the Court's Order, I recommend that the Court deny Williams's first motion for summary judgment.

Both parties have now moved for summary judgment on the merits. Williams argues that the ALJ erred in not finding that he met the listing for intellectual disability under § 12.05(B).[3]

### III. Discussion

Listing § 12.05 addresses intellectual disability or "significantly subaverage general intellectual functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Prong 1 of the listing requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *Id.* Prong 2 requires that the claimant meet one of four "level[s] of severity for the disorder," listed as A–D. *Id.* At issue in this case is requirement B, which requires a "valid verbal, performance, or full scale IQ of 59 or less." *Id.* The claimant has the burden of proving that his intellectual disability met or equaled both prongs of Listing § 12.05. *Hancock*, 667 F.3d at 476.

#### A. Relevant Evidence

As part of his disability paperwork, Williams submitted written disability forms that his wife completed for him. On the forms, Williams indicated that he could read English and that he

---

[3] Having determined that Williams did not have a severe mental impairment, the ALJ did not address whether Williams met the listing for intellectual disability. Nevertheless, he employed the standard of Listing §§ 12.00 and 12.05 in the severity analysis. On appeal, neither Williams nor the Commissioner address the ALJ's severity determination at step two; instead, their arguments address solely whether substantial evidence supports the ALJ's determination (or lack of a determination) that Williams did not meet Listing § 12.05(B). With the issue on appeal framed in this manner, I will consider the ALJ's analysis at step two to determine whether substantial evidence supports the conclusion at step three. *See Vest v. Astrue*, No. 5:11cv47, 2012 WL 4503180, at *3 (W.D. Va. Sept. 28, 2012) (citing *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's finding at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.")).

wore glasses when reading and writing. R. 202, 219. He was able to take care of his grandchild, pay bills, and manage a bank account. R. 214, 216. He prepared simple meals, cleaned the house, and did yard work. R. 213, 215. Williams did not indicate that his mental impairments caused problems in any areas of self-care or functioning, such as understanding and remembering things, completing tasks, concentrating, following instructions, or getting along with others. R. 214, 218. The ALJ noted that Williams reported difficulty following written instructions, but he could follow verbal instructions "fairly well." R. 22, 218.

At the administrative hearing, Williams's attorney informed the ALJ that he had recently begun representing Williams, had conducted mental testing, and had obtained Williams's school transcript that showed an IQ of 65. R. 38. His counsel then asserted that Williams met Listing § 12.05(C). R. 38–39. Williams had not previously claimed to have an intellectual disability.

Williams testified that he completed the tenth grade and was in special education classes. R. 39. He testified that he can read, but he could not read a newspaper or the disability forms that his wife completed for him. R. 40. He reported having trouble with basic math. *Id.* He regularly drove a car. R. 40–41

A two page school transcript reveals that Williams completed the tenth grade, was enrolled primarily in special education classes, and earned mostly "D" grades. R. 275. The transcript also indicates that Williams received an IQ score of 65 in elementary school, but the transcript provides no other details about the score, such as the type of test or precisely when it was conducted. *Id.*

On June 5, 2012, Chris Cousins, Ph.D., a licensed clinical psychologist, examined Williams and prepared a Psychological Report. R. 436–39. As part of his assessment of Williams's intellectual functioning, Dr. Cousins conducted a Wechsler Adult Intelligence Scale-

6

IV. The test yielded a full scale IQ of 59, verbal comprehension index of 61, perceptual reasoning index of 75, working memory index of 69, and processing speed index of 53. R. 437. Dr. Cousins opined that the results were a "fairly valid indicator of his intellectual functioning." R. 436.

Reviewing Williams's school transcript, Dr. Cousins noted the child IQ score of 65[4] that he determined placed Williams's functioning in the deficient range. R. 437. He also noted that Williams was enrolled in special education curriculum. *Id.* The current IQ scores, according to Dr. Cousins, were "fairly consistent" with the child IQ score. R. 438. Dr. Cousins also considered that Williams had worked as a laborer, tobacco blender, and brick mason, the latter being a "fairly complex task." *Id.*

In a narrative section of his report, Dr. Cousins explained that the IQ test results placed Williams in the mild range of intellectual disability, but that his work history showed he could function at a slightly higher level. R. 437–38. Dr. Cousins cautioned that "no psychological or intellectual test should ever be used in isolation to diagnose a disorder or condition." R. 438. Considering all of the information before him, Dr. Cousins opined that he suspected Williams may function at the low end of the borderline range, but he could not rule out mild intellectual disability based on the child IQ score. R. 438. Dr. Cousins opined that Williams was able to perform simple repetitive tasks and, on a very limited basis, perform very specific, detailed, and complex tasks with special instructions or supervision. *Id.*

---

[4] Although the transcript does not indicate the genesis of the IQ score, Dr. Cousins states that it was the product of the Wechsler Intelligence Scale for Children-Revised or "WISC-R." R. 437–38. The record does not reveal how he made this determination.

At step two, the ALJ determined that Williams did not have a severe mental impairment, including intellectual disability. R. 22. The ALJ noted Williams's history of special education and IQ score of 65 from his school transcript, but he determined that this score was arbitrary given the lack of other evidence of Williams's intellectual functioning from before he turned 22 years old. *Id.* The ALJ also discussed Williams's work history. He attached great significance to Williams's work as a brick mason, an occupation designated as skilled and SVP 8,[5] according to the vocational expert. R. 22, 60. The ALJ noted Dr. Cousins's assessment that Williams functioned at the low borderline level—a level above that indicated by the IQ scores alone. *Id.* The ALJ also noted Dr. Cousins's finding that Williams had only mild limitations in mental functioning. *Id.* The ALJ assigned Dr. Cousins's opinions great weight.

The ALJ also examined the Paragraph "B" impairment related functional limitations under Listing § 12.00(C). R. 23. As the ALJ noted, Williams was able to take care of his grandchild, pay bills, and manage a bank account, and he had no limitations in social functioning. R. 23, 214, 216. He also noted that Dr. Cousins assessed a similar lack of limitations attributable to a mental impairment. R. 22, 438. These functional limitations are not directly applicable to Listing § 12.05, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (2014); they can, however, provide some insight into any deficits in adaptive functioning.

---

[5] "SVP" stands for "Specific Vocational Preparation." An SVP level describes the time typically required to "learn the techniques, acquire the information, and develop the facility needed for average" job performance. Dep't of Labor, Office of Admin. Law Judges, *Dictionary of Occupational Titles* app. C ¶ II (4th ed. 1991). An SVP of 5 to 9 corresponds with skilled work. Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

*C.      Analysis*

An impairment meets a listed impairment if it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [one-year] duration requirement." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). Under Prong 1 of Listing § 12.05, a claimant must prove a deficit in adaptive functioning generally and that the deficit manifested itself before age 22. *Hancock*, 667 F.3d at 475. "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)).

The Commissioner argues that Williams has not proven any deficits in adaptive functioning that manifested during his developmental period. The Court of Appeals for the Fourth Circuit has recognized that intellectual disability is a "lifelong condition." *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985). Thus, the court presumes that in the absence of evidence of a change in intellectual functioning, a person's IQ remains constant. *Id.*

The ALJ noted Williams's enrollment in special education classes, but he neglected to mention that Williams received "D" grades throughout school—a factor that Williams relies on to show his adaptive functioning. The ALJ determined that Williams's IQ score of 65, as noted on his school transcript, was an arbitrary number. Dr. Cousins, however, found that Williams's testing in 2012 and as a child were fairly consistent and indicated intellectual deficiencies. Although Williams's IQ score from elementary school was obtained many decades ago and during his developmental period, *see Gibson v. Astrue*, No. 2:11cv60, 2011 WL 6888532 (W.D. Va. Dec. 29, 2011) (finding low childhood IQ scores from more than 25 years before that

conflicted with recent, much higher IQ scores were invalid), no evidence in the record shows that Williams's functioning has changed over time. Accordingly, the evidence in the record adequately demonstrates that Williams's intellectual functioning has remained fairly constant from before he turned 22 to the present.

The record, however, does not establish the requisite deficit in adaptive functioning, which requires a showing of some, but not a complete, deficit. *Henry v. Colvin*, No. 3:13cv357, 2014 WL 856358, at *10 (E.D. Va. Mar. 4, 2014). The ALJ noted Dr. Cousins's opinion that despite Williams's IQ score indicating mild intellectual disability, he appeared to function at a higher level in the low borderline range. Such a finding is inconsistent with the requisite deficiency in adaptive functioning of Prong 1. *See Sechrist v. Colvin*, No. 4:13cv167-D, 2014 WL 4162384, at *6 (E.D.N.C. July 31, 2014) ("Borderline intellectual functioning involves a lesser degree of intellectual deficiency than [intellectual disability].") (citations omitted). Dr. Cousins based this determination in large part on Williams's work history. The ALJ credited this rationale, noting Williams's work as a bricklayer, which is classified as skilled and SVP 8. *See Perkins v. Comm'r*, 553 F. App'x 870, 873–74 (11th Cir. 2014) (per curiam) (finding substantial evidence supported ALJ determination that claimant did not meet the requirement for deficit in adaptive function of Listing § 12.05(C) because of his skilled work as a cook and his daily activities, despite IQ scores in the 60s).

Williams argues that his school records demonstrated a deficit in his adaptive functioning. Pl. Br. 3. This evidence is insufficient, for enrollment in special education classes, poor grades, and failure to complete high school alone do not establish deficits in adaptive function. *See Henry*, 2014 WL 856358, at *10.

10

Williams also cites an opinion of the presiding District Judge, *Carter v. Barnhart*, No. 4:05CV14, ECF No. 12 (W.D. Va. Feb. 10, 2006). In *Carter*, District Judge Jackson L. Kiser observed, "[s]imply having a job or a bank account does not itself prove that a person cannot be deficient in adaptive functioning and, as such, be [intellectually disabled]." *Id.* at 5. Notwithstanding the obvious truth of this observation, when assessing a person's deficit in adaptive function, the nature of that person's past work matters. In *Carter*, the claimant worked for 14 years as a mixer cleaner in a rubber products plant. Williams, however, performed skilled work as a brick mason. The ALJ properly determined that performing skilled work is a factor that weighs heavily against finding a deficit in adaptive function.

Moreover, in *Carter*, the ALJ relied on the claimant's work history, her ability to maintain her finances, and a single IQ test of questionable validity taken during the claimant's childhood to reject IQ testing of a reliable nature taken when she was 44 years old. Judge Kiser found that substantial evidence did not support the ALJ's decision to reject the later, more reliable IQ test, and he determined that remand was necessary to assess whether the claimant's intellectual functioning had changed over time.

Williams's case is distinguishable. Here, the ALJ relied on Williams's skilled work, more significant activities of daily living than in *Carter*, including managing finances, driving, and taking care of himself and his grandchild, and the uncontradicted opinion of Dr. Cousins that Williams functioned in the low borderline range. Moreover, Williams identified no limitations, other than conflicting evidence about reading ability, attributable to a mental impairment. Indeed, the facts in this case are similar to those in *Hancock v. Astrue*, where the Fourth Circuit determined that the claimant's work history and activities of daily living supported the ALJ's decision that she had no deficit in adaptive function generally. *See* 667 F.3d at 475–76.

11

As noted above, the ALJ did not assess Williams's intellectual disability at step three, but his analysis at step two provides adequate findings relevant to the listing analysis. The ALJ relied on Dr. Cousins's report, which was the only medical opinion in the record concerning Williams's intellectual disability. He also relied on Williams's daily activities and his skilled work history. I cannot find that this reliance was misplaced. Under the substantial evidence standard, the record supports the ALJ's determination that Williams does not have the requisite deficit in adaptive functioning. Williams must satisfy both prongs of § 12.05 to meet or equal the Listing. He has not established that he meets Prong 1; thus, I recommend that the Commissioner's final decision be affirmed. *See Caldwell v. Astrue*, 2011 WL 4945959, at *4 (W.D.N.C. Oct. 18, 2011). Nonetheless, I will address Williams's argument regarding Prong 2 of § 12.05.[6]

In arguing that he meets Prong 2 of Listing § 12.05(B), Williams relies on his raw IQ scores. Pl. Br. 3–4. While significant and necessary to meet Prong 2 requirements B–D, IQ scores alone are not dispositive.

> The results of standardized intelligence tests may provide the data that help verify the presence of intellectual disability or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, [because] the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(a) (2014); *see also* Am. Psychological Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 37 (5th ed. 2013) ("The diagnosis of

---

[6] The ALJ's rationale under step two addresses Williams's deficit in adaptive function, or Prong 1. Thus, this case is distinguishable from *Luckey v. HHS*, 890 F.2d 666 (4th Cir. 1989), and *Branham*, 775 F.2d 1271, where the ALJ erroneously considered a claimant's work experience in finding that he did not meet the severity requirement of Prong 2 of Listing § 12.05(C). *See Perkins*, 553 F. App'x at 873 ("While an ALJ may not consider a claimant's work experience after accepting an IQ score as valid and finding that the claimant meets Listing 12.05, here the ALJ determined that Perkins' adaptive functioning precluded him from meeting Listing 12.05(C).").

intellectual disability is based on both clinical assessment and standardized testing of intellectual and adaptive functions."). "Where an I.Q. score is inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of [intellectual disability]." *Powell v. Barnhart*, 6:04cv63, 2005 WL 1926613, at *4 (W.D. Va. Aug. 9, 2005).

In his narrative report, Dr. Cousins compared Williams's IQ scores with other evidence of his adaptive functioning and opined that he functioned in the low borderline range. The ALJ relied upon Dr. Cousins's uncontradicted medical opinion in determining that Williams functioned at a higher level than that suggested by his IQ scores alone. This determination is consistent with the regulations and is supported by substantial evidence. Thus, even if Williams had proven the requisite deficit in adaptive function, his IQ score alone would not have established that he met Listing § 12.05(B) given Dr. Cousins's explanation of the score.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the Commissioner's motion for summary judgment, ECF No. 24, be GRANTED, Williams's motions for summary judgment ECF Nos. 12, 20, be DENIED, and the Commissioner's final decision be affirmed.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

13

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: October 3, 2014

Joel C. Hoppe
United States Magistrate Judge